## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HAROLD CICCOTTI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-969-XR |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered Plaintiff Harold Ciccotti's appeal of the Social Security Administrations's (SSA) denial of his application for Disability Insurance Benefits.  The Court AFFIRMS the decision of the Appeals Council and Administrative Law Judge that Ciccotti is not disabled within the meaning of applicable law and the decision of the Commissioner to deny benefits.

## I.  Introduction

Plaintiff seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits (DIB) by the Administrative Law Judge (ALJ).  Ciccotti alleges that the ALJ's decision is not grounded in substantial evidence and that the ALJ made three prejudicial procedural errors.  Ciccotti maintains that the Defendant, Michael J. Astrue, Commissioner of the Social Security Administration, therefore denied him benefits and would not have otherwise. Ciccotti asks the Court to reverse the decision and to render judgment in his favor.  In the alternative, Ciccotti asks the Court to reverse the decision and remand the case for further factual development.

The parties have submitted their briefs and the Court has considered the administrative record.[1]

## II.  Standard of Review

### A.  Definition of a disability entitling a claimant to benefits

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive disability insurance benefits (DIB).  42 U.S.C. § 423(a)(1).  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Claimants are determined to be disabled only if they have physical or mental impairments so severe as to make them unable to do their previous work and unable to do any other kind of work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).

### B.  This Court's Standard for Reviewing ALJ Decisions

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether (1) substantial evidence supports the decision and (2) whether the Commissioner applied the proper legal standards in evaluating the evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

First, the Court looks to substantial evidence.  If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.

---

[1]Pl.'s Br., Mar. 22, 2010 (Docket No. 8); Def.'s  Br., May 3, 2010 (Docket No. 9); Pl.'s Resp. Br., May 12, 2010 (Docket No. 10).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021–22 (explaining that a court does not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's.).  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez*, 64 F.3d at 174.

Next, the Court evaluates whether the Commissioner applied the proper legal standards.  The doctrine of harmless error applies in DIB cases.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  "Procedural perfection in administrative proceedings is not required" when "the substantial rights of a party have not been affected." *Id.*  (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).  Plus, procedural errors are only a reason to remand if they cast into doubt the existence of substantial evidence to support the ALJ's decision.  *See Morris*, 864 F.2d at 335.

Thus, in the following discussion, the Court finds a few instances of imprecision, but holds that they do not obscure the way in which the ALJ chose to weigh the evidence in the record.  On remand, a procedurally air-tight decision would reach the same conclusion.  Thus, the Court affirms.

3

## II.  Background and Procedural History

### A.  How the ALJ determines disability - evaluation process & burden of proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.  20 C.F.R. § 404.1520 (2010).  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The process is as follows:

Step One: The ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520 (2010).  If so, the claimant will be found not disabled regardless of his or her  medical condition or her age, education, or work experience.  *Id.*

Step Two: The ALJ determines whether the claimant's impairment is severe.  *Id.*  If it is not severe, the claimant is deemed not disabled.  *Id.*

Step Three: The ALJ compares the severe impairment with those on a list of specific impairments.  *Id.*  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.  *Id.*  If the impairment is not on the list, the ALJ moves to step four.

Step Four: The ALJ determines the claimant's residual functional capacity (RFC) and reviews the demands of the claimant's past work.  *Id.*  The RFC determination at the initial claim level is a finding of fact made by a state agency doctor who reviews the entire treatment record.  SSR 96-5p, 1996 WL 374180, at *3 (July 2, 1996).  At the ALJ review stage, this becomes opinion evidence for the ALJ to consider.  *Id.*  If the ALJ decides the claimant can still do past work, the claimant is not disabled.  20 C.F.R. § 404.1520.  If the ALJ decides the claimant cannot do past work, then the ALJ moves to step five.  *Id.*

Step Five: The ALJ evaluates the claimant's ability to do other work, based on RFC, age, education, and work experience. *Id.* If the claimant cannot do other work, he or she will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential analysis. *Leggett*, 67 F.3d at 564. When a claimant shows an inability to perform previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available for the claimant. The claimant must be able to perform this work physically and maintain it for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002). If the Commissioner adequately points to potential alternative work, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## B. ALJ's application of the five steps

The parties do not contest the time-frame of this dispute, and thus, the issue is whether Ciccotti was entitled to Social Security DIB between the alleged onset date of May 10, 2005, and his lapse of Social Security Income coverage on December 31, 2007. Tr. 12. The ALJ held a hearing on this issue and sought additional evaluations of Ciccotti's physical and mental capabilities from consulting experts before handing down the final decision. Tr. 40–41; Pl.'s Br. 2.

The ALJ conducted the five-step analysis and decided at step five that Ciccotti is not disabled within the meaning of applicable law. *See* 20 C.F.R. § 404.1520. At step one, Ciccotti's claim survived because the ALJ agreed that Ciccotti had not worked substantially since his alleged onset date. Tr. 20, finding 2. At step two, Ciccotti's claim survived because the ALJ determined from the medical evidence that Ciccotti had severe, medically determinable, physical and mental

impairments. Tr. 20, finding 3. At step three, Ciccotti's claim was not resolved in his favor because the ALJ found that Ciccotti's impairments did not match or equal any of those found on the statutory list. *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

Because Ciccotti's impairment did not meet the statutory list, the ALJ considered the evidence and made an RFC determination for use in steps four and five. First, the ALJ decided that Ciccotti retained exertional capacity for the sustained performance of a range of light work activities but not the full range because he could not stand longer than thirty minutes at a time, nor for more than four hours during any day. Tr. 21, finding 7. Second, the ALJ decided that Ciccotti's mental limitations limited his nonexertional work activity to the following: "understanding, remembering and carrying out simple job instructions; concentrating for extended periods; interacting with others; and responding to changes." Tr. 21, finding 8.

At step four, the ALJ found that Ciccotti's physical and mental limitations rendered him "unable to perform his past relevant work as a construction job site quality control manager, truck driver or maintenance worker in the critical period." Tr. 21, finding 9. Thus, he moved to step five to determine what other work Ciccotti could do.

At step five, the ALJ determined that Ciccotti's nonexertional limitations did not significantly compromise his "capacity for the full range of sedentary or light work activities." Tr. 22, finding 12. Since his RFC would support work in the national economy in "more than 200 unskilled jobs" at just the sedentary level (not including light work), the ALJ concluded that Ciccotti was not disabled as defined in the Social Security Act. Tr. 20; *see* 20 C.F.R. pt. 404, subpt. P, app. 2., Guideline 201.00(a).

**C.  Administrative proceedings in this case**

Ciccotti exhausted his administrative remedies prior to filing this action, and thus the case is properly before the Court.  The ALJ's decision in this case became the agency's final decision when the SSA's Appeals Council declined to review it.  Tr. 1.  Ciccotti properly filed this civil action within sixty days of that final decision.  *See* 42 U.S.C. § 405(g); Appeals Council Decision, October 9, 2009, Tr. 1; Pl.'s Original Compl. 2, December 4, 2009 (Docket No. 1).

The Court reviews the medical record.  First, the Court summarizes the relevant notes of Ciccotti's Veterans Administration (VA) doctors.  Then, the Court summarizes the medical opinions of the two state agency medical consultants.  After this account of the record, the Court will address whether substantial evidence supports the ALJ's written opinion.

### III. The Medical Record

There are four groups of VA hospital visits that are relevant in this case.  There are also two medical opinions by state agency medical consultants that are relevant.  Both are summarized below.

*Visit One:* Upon referral for physical pain, Ciccotti sought treatment for depression at the VA hospital in September 2003.  Tr. 530.  The ALJ summarized this visit.  Tr. 15–16.  Ciccotti had been having some suicidal thoughts and other thoughts consistent with depression.  Tr. 530. Sokchea Doeng, a medical student supervised by psychiatrist Dr. Iva Timmerman, diagnosed him with dysthemia, a "rather less severe chronically depressed mood," and prescribed him with a mood stabilizer and a sedative.  Tr. 16.  Ciccotti also attended group therapy until he left the VA hospital in October.  Tr. 16.

*Visit Two:* Ciccotti was not treated for depression for nearly three years until March 2006,

when he again went to the VA hospital.  Tr. 659–60.[2]  He was seen first by psychologist Katherine

McQueen, Ph.D.  *Id.*  Ciccotti had been living with his girlfriend of about two years in Sanderson,

Texas, approximately 250 miles from the VA facility where he sought treatment.  *Id.*  As the ALJ

noted, Ciccotti reported that "he still feels that his anger can be intense and it troubles him.

However, he says he has not acted out in any inappropriate manner."  *Id.*  McQueen also reported

that "[h]e looked fairly cheerful today and reported that he often has good days," even though at this

time, he was off of his medication.  *Id.*  As the ALJ noted, Dr. McQueen arranged for a return to

individual psychotherapy sessions and a follow-up appointment to determine his need for

medication.  *Id.*  Neither Ciccotti nor the Commissioner dispute the ALJ's characterization of this

exam.  Ciccotti's Global Assessment of Functioning (GAF)[3] score was 67, according to Dr.

McQueen—at most a moderate limitation. *Id.*; *see also* Tr. 16.

Psychiatrist Johnathan Chang, MD, examined Ciccotti in August 2006.  Tr. 585.  Ciccotti

had been hospitalized for chest pains.  *Id.*  The ALJ stated that Dr. Chang's notes are consistent with

Dr. McQueen's from March 2006.  Tr. 16.[4]  Dr. Chang diagnosed Ciccotti with depression not

otherwise specified (NOS), ruling out major depressive disorder.  *Id.*  He set Ciccotti's GAF score

at 60, an indication of a moderate limitation in either psychological, social, or occupational

---

[2]The ALJ at one point refers to an exhibit in the record that is over 300 pages long with no pinpoint citation.  The Court has identified the specific item.  *See* Tr. 659.

[3]The GAF score is "the clinician's judgment of the individual's overall level of functioning . . . with respect only to psychological, social, and occupational functioning." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS - TEXT REVISION (DSM-IV-TR) MULTIAXIAL ASSESSMENT 30, 32 (4th ed. 1994, rev. 2002).

[4]The ALJ cited the date of the visit incorrectly as August 18, 2006.  The correct date is August 16, 2006.  The error in the date is not relevant to this analysis.

functioning.  *Id.*

According to the ALJ, Dr. Chang adjusted Ciccotti's medications and prescribed a low dose of an anti-psychotic drug, but only due to Ciccotti's distance from the treatment facility.  Tr. 16, 585  He was not psychotic.  Tr. 585.[5]

*Visit Three:* Dr. Chang evaluated Ciccotti at another followup in May 2007.  Tr. 1166.  At this appointment, Ciccotti "was not forthcoming" about failing to regularly take his Wellbutrin, but he also reported that he was doing "reasonably well."  *Id.*  As a result, Dr. Chang discontinued Wellbutrin and rated his GAF at 60 once again.

*Visit Four:* Psychiatrist Brent Harlan, MD, examined Ciccotti in September, 2007 and started him on Wellbutrin again.  Tr. 1218–21.  At this appointment, Ciccotti recounted an anger outburst involving cursing for 15 minutes after trying to fix his car and that he sometimes breaks things.  *Id.*  Still, Dr. Harlan rated his GAF at 60.  *Id.*  Ciccotti himself blamed his recent problems with anger on being off Wellbutrin.  Tr. 1220.

*Medical Consultant Evaluation One:* A state agency psychologist, Caren Phalen, Ph.D, who reviewed the medical records in this case in late-September 2006 (between Visits Two and Three), found that Ciccotti suffered from "depression, NOS," a condition that does not "precisely satisfy the diagnostic criteria" set out in 20 C.F.R. pt. 404, subpt. P, app 1.  *See* Tr. 808.  Then, as the process

---

[5]In the August appointment, Dr. Chang re-started the patient on Wellbutrin (bupropion hydrochloride), an antidepressant.  *See* Physicians' Desk Reference, 2010 PDR 1719 (Thomson Healthcare ed., updated 2010).  Ciccotti had been off it, although it was previously prescribed.  When Ciccotti complained *a month later* at the September appointment that its effects were not as satisfying as they had been in his previous course of treatment, Dr. Chang prescribed the anti-psychotic drug.  Tr. 543.  Ciccotti did not note this confusion in the ALJ's decision, but the Court does not think it is particularly relevant because the diagnoses and GAF assessments were the same for both doctors at both meetings.  Tr. 585–86; 543–44.

directs, she assessed the impacts on Ciccotti's abilities in the four categories.  Tr. 815; *see* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.04(B).  She found that his mental impairment led to mild limitations in the activities of daily living; moderate limitations in difficulties maintaining social functioning; moderate limitations in difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.  Tr. 815.  Finally, she found that there was no evidence to support the existence of a medical condition meeting paragraph C of the appendix.  Tr. 816.

Based on this mental impairment, Dr. Phalen assessed Ciccotti's mental RFC, or "the most [a person] can still do despite [mental and physical] limitations." 20 C.F.R. § 404.1545(a)(1) (2010). Dr. Phalen made the following relevant determinations; that Ciccotti retained: (1) moderately limited ability to interact appropriately with the general public; (2) moderately limited ability to accept instructions and respond appropriately to criticism from supervisors; (3) moderately limited ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (4) moderately limited ability to respond appropriately to changes in the work setting.  Tr. 820.

Thus, Dr. Phalen found that Ciccotti could (1) understand, remember, and carry out only simple instructions; (2) make simple decisions; (3) concentrate for extended periods; (4) interact with others; and (5) respond to changes.  Tr. 821.  Dr. Phalen's RFC assessment meant that Ciccotti was capable of basic work activities.  *See* 20 C.F.R. § 404.1521(b) (2010).  Thus, his impairments were not severe with regard to his ability to find and keep a set of possible jobs in the national economy.  20 C.F.R. § 404.1521(a).

*Medical Consultant Evaluation Two:* At Ciccotti's hearing before the ALJ, the ALJ ordered two state agency consultant medical exams; one physical and one mental.  Tr. 26–41.  This dispute arises from the mental assessment conducted by state agency medical consultant Perry Marchioni,

Ph.D.  Tr. 1264.  He examined the record, as had Dr. Phalen.  Tr. 1256–65.  He also examined Ciccotti in person and conducted a mental status exam.  *Id*.  He found that Ciccotti had a GAF of 50, and he also found that Ciccotti had the following: (1) markedly limited ability to interact appropriately with the public; (2) markedly limited ability to interact appropriately with supervisors; (3) markedly limited ability to interact appropriately with co-workers; and (4) markedly limited ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 1263–64. Dr. Marchioni indicated that he based these determinations on the mental status exam. *Id.*  He also determined that Ciccotti's "work attendance" would be affected by his mental impairment but did not explain further when asked to "describe how [the capability] is affected." *Id.*

There were common elements between these two evaluations, however.  Both found that Ciccotti could understand, remember, and carry out simple job instructions; though not complex tasks.  Tr. 820–21, 1263–64.

## IV. Analysis

Based on the visits and record outlined in Part III, the Court now reviews the ALJ's decision and concludes that it was based on substantial evidence.  The Court further concludes that the ALJ did not commit the alleged procedural errors and that, even if he had, none of the alleged errors are reversible.  Therefore, the Court affirms the ALJ and SSA Appeals Council's final decision.

## A. Substantial Evidence

As required, the Court only looks at whether the ALJ's written opinion is supported by substantial evidence.  If so, the Court must affirm unless prejudicial procedural errors occurred. Even if there is evidence to support Ciccotti's view of the facts, this Court is not to reweigh the

11

evidence; it is only to decide whether the ALJ decision stands on reasonable ground.

Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education and work experience. *Martinez*, 64 F.3d at 174.

Ciccotti does not contest the ALJ's characterization of the medical facts, nor any determinations the ALJ made regarding his age, education, or work experience. Ciccotti does, however, contest the opinions of his treating physicians in light of Dr. Marchioni's findings in Medical Consultant Evaluation Two. The basis of some of the ALJ's evidence is Ciccotti's subjective evidence of pain and disability, in addition to the objective medical facts and the diagnoses and opinions of Ciccotti's doctors. Thus, the Court addresses three general justifications the ALJ offered to support his view of the evidence.

1.   *Because Ciccotti impeached himself, the ALJ trusted his representations to Dr. Marchioni less, and thus found Medical Evaluation Two to be in accord with Medical Evaluation One.*

When a case is before the ALJ, the ALJ is charged with weighing the evidence and making a RFC determination. 20 C.F.R. § 404.1546(c) (2010). At the ALJ stage, a state agency medical consultant's RFC findings are opinion evidence to be considered in light of all of the evidence. *See* 20 C.F.R. § 404.1527(f)(2)(I) (2010).

The ALJ was thus free to evaluate the strength of support for Dr. Marchioni's findings; he viewed that strength with skepticism. The ALJ did so because he believed that Ciccotti was trying to mislead the agency and noted that Ciccotti claimed he had dyslexia and needed assistance in writing yet later claimed that his hobby was writing. Tr. 108, 1218. The ALJ also noted skeptically

that Ciccotti used a cane in one exam, but not the other, and that was confirmed in the medical records. Tr. 18, 1248, 1258. Thus, when some of the medical tests run by Dr. Marchioni were based on Ciccotti's cooperation, the ALJ appears to have been skeptical of the result. Tr. 18. At the hearing, *before* Dr. Marchioni's assessment and with Ciccotti in the room, the ALJ mentioned that the exams would help his decision. *See* Tr. 41. It is thus clear from the ALJ's assessment of Ciccotti's credibility that Ciccotti's previous attempt to manipulate the system played a role in how the ALJ evaluated statements Ciccotti made to the doctor, knowing his benefits were on the line. Tr. 13.

There is substantial evidence in the record for the ALJ's skepticism with regard to Dr. Marchioni's findings that Ciccotti's limitations were more severe than the VA doctors had found. This is because the evaluation was based on Ciccotti's cooperation and the likelihood of his exaggeration has support in the record.

2.    *The ALJ based his opinion on all the evidence in the record, including the treating notes and a stable record of GAF scores indicating only moderate limitations.*

As the medical record shows, on more than one visit, Drs. McQueen and Chang set Ciccotti's GAF at between 60 and 68. Of particular relevance are Visits Three and Four. Ciccotti cites Visit Three as evidence that is consistent with "marked limitations with social interactions and in responding appropriately to changes in a routine work setting." Pl.'s Br. 6. The Court does note, however, that the GAF assessment did not change significantly despite Ciccotti being off his medication. Ciccotti said himself that he was doing well.

Ciccotti also cites a January 2007 appointment with Dr. Chang. Pl.'s Br. 6. At this visit, the notes track closely to the later Visit Three and support the ALJ's view. Ciccotti reported that he was

13

off the anti-psychotic drug and that he was doing "reasonably well," "[had] enough energy to get through the day," and that he was maintaining "interests in pleasurable activities." Tr. 1203. Dr. Chang took him off the anti-psychotic drug and assessed his GAF at 60, even though Ciccotti reported irritability and anger. Tr. 1205. While the visits can be consistent with marked limitations, they are also consistent with moderate limitations.

The ALJ summarized Visit Four and pointed to its similarity to Dr. Chang's assessments. Tr. 17. Ciccotti cites this appointment as evidence of Ciccotti's "severe problems with anger control." Pl.'s Br. 6. Yet, Dr. Harlan still rated his GAF at 60. Tr. 1218–21.

Because these visits assess GAF after both a discontinuation of medication and Ciccotti's subjective complaints of irritability and anger, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that Ciccotti was only moderately limited.

3.      *The ALJ based his opinion in part on Ciccotti's irregular usage of medication despite the advice of his treating doctors.*

The ALJ noted Visit Three and decided that Ciccotti's non-compliance with his medication "has contributed to [his] diminished functioning" and therefore his subjective complaints of his limitations were not credible. To the ALJ, "he would not continue to nullify the treatment regimen if he was as limited as alleged." Tr. 19.

The Court notes that the ALJ seems to suggest a cause and effect relationship between the medication and more positive follow-up exams with Dr. McQueen. Tr. 16. As the Court reads the record, however, Dr. McQueen and Dr. Chang both saw Ciccotti on the same days in August and again in September. Tr. 582–86; 540–44. Dr. McQueen set Ciccotti's GAF at 68 both times; Dr. Chang set it at 60 both times. *Id.*

14

But, evidence for this cause and effect relationship is not precisely needed because the ALJ has a firm basis for his decision.  His ultimate determination was that Ciccotti "has an anger problem," but that "it is acceptably controlled by medication."  Tr. 19.  Indeed, at each of the Visits above, except for Visit Three, the doctors indicated that medication was appropriate and would be helpful.  At Visit Three, Ciccotti was taken off of it because he seemed to be doing well in spite of not taking it.  At Visit Four, in which the fifteen-minute anger outburst was discussed, the record shows that Ciccotti himself blamed his recent problems with anger on being off Wellbutrin.  Tr. 1220.

Thus, there is substantial evidence in the record that supports the ALJ's determination that Ciccotti's irregular use of medication indicates that he was not as impaired by anger as he claimed. He could have used his medication.  And even if he did not, his GAF was still stable at between 60 and 68.

Substantial evidence supports the ALJ's decision to view Dr. Marchioni's findings with some skepticism considering Ciccotti's impeachment, the stable GAF scores until an appointment at which Ciccotti knew his benefits were on the line, and the role that medication could have played in Ciccotti managing his own impairment.

Having concluded that substantial evidence supported the ALJ's determinations, the Court now turns to the allegations of procedural error.  Remand will only be justified if there is a procedural error and if the error *itself* indicates that the substantial evidence discussed above is actually in doubt.

**B.  Procedural Errors**

When an ALJ makes a decision about RFC, he is required to consider all of the evidence.

15

20 C.F.R. § 404.1527(c) (2010). The ALJ may not disregard any medical opinions, even on issues that are reserved for the commissioner as legal determinations. 20 C.F.R. § 404.1527(f)(2)(I). The ALJ can decide to give one medical opinion more weight than another as long as he explains why and that explanation is backed by substantial evidence. 20 C.F.R. § 404.1527(f)(2)(ii). That explanation must also consider six factors. *Id.* When the ALJ rejects a treating doctor's opinion, he must make this analysis explicit in the opinion. *Beasley v. Barnhart*, 191 F. App'x 331, 334, 336 (5th Cir. 2006) (per curium). The plaintiff alleges prejudicial deficiencies in this part of the ALJ's analysis. The Court disagrees.

The Court has construed the Plaintiff's brief to allege three procedural errors. The ALJ allegedly erred by (1) not conducting a six-factor test to weigh the medical opinions of non-treating doctors, (2) not explaining the weight given to competing medical opinions, and (3) disregarding a particular medical opinion.

1. *The ALJ did not err by not conducting a six-factor test weighing medical opinions of non-treating doctors because he is not required to do so.*

The ALJ was not required to conduct a six-factor test to weigh the medical opinions of non-treating doctors because the doctors were not treating doctors. Examining doctors are not entitled to the weight of treating doctors. *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (per curium); *see also Gonzales-Sargent v. Barnhart*, No. SA-06-CA-0355-XR, 2007 WL 1752057, at *8 (W.D. Tex. June 15, 2007) (rejecting Plaintiff's claim that a prior Fifth Circuit case requiring the six-part analysis for a treating doctor also applies to a non-treating doctor). Also, even with treating doctors, it is not reversible error for an ALJ not to address the § 404.1527(d) factors directly as long as the ALJ's written opinion satisfies three requirements: (1) it notes the medical opinion; (2) the

noted medical opinion does not refute other evidence in the record supporting the ALJ's written opinion; and (3) it reflects that the ALJ considered the relevant factors even if not listed. *Bryant v. Astrue*, 272 F. App'x 352, 355 (5th Cir. 2008) (per curium). The Court concludes that even if Dr. Marchioni had been a treating doctor, the ALJ's written opinion would still not subject the ALJ to reversal.

A one-time examining consultant is not entitled to the weight of a treating doctor. *Robinson*, 271 F. App'x at 396. With non-treating doctors' opinions, ALJs are free to "[incorporate] the limitations [found] consistent with the weight of the evidence as a whole." *Id.* In *Hernandez*, a doctor who examined the plaintiff on three separate occasions was still found not to have a treating relationship and thus, the ALJ had no statutory requirement under 20 C.F.R. § 404.1527(d) to conduct a six-part analysis to determine the weight to give each medical opinion. Here, Dr. Marchioni is not a treating physician, as Ciccotti acknowledged in his brief. *See* Pl.'s Br. 4. Thus, the ALJ was free to incorporate his findings in light of the weight of the evidence as a whole.

But, even if Dr. Marchioni had been a treating doctor, the ALJ's written opinion would still stand because the ALJ's opinion meets the three requirements to preclude reversible error when not addressing the Section 404.1527(d) factors directly.[6] The first requirement is self-explanatory. The second requirement was satisfied in *Bryant* because the court did not find the medical opinion to conflict with the other medical evidence. The plaintiff argued that a doctor's ordering of back surgery would refute an RFC determination that the plaintiff could do some lifting at work, reasoning

---

[6]As previously noted, it is not reversible error for an ALJ not to list the § 404.1527(d) factors as long as the ALJ's written opinion satisfies three requirements: (1) it notes the medical opinion; (2) the noted medical opinion does not refute other evidence in the record supporting the ALJ's written opinion; and (3) it reflects that the ALJ considered the relevant factors even if not listed. See discussion supra (citing *Bryant*, 272 F. App'x at 355).

that surgery is not ordered on healthy backs.  But, the court rejected this claim because an order of back surgery with a recovery period is not in conflict with lifting ability after the recovery as part of a patient's RFC for work.  The third requirement was satisfied in *Bryant* because the ALJ "[indicated] that he considered [the § 404.1527(d) factors]" by citing that section; detailing the doctor's examining and treatment relationship with the plaintiff as gleaned from the evidence before him; noting the doctor's specialization; and noting the way in which the doctor's medical opinion was consistent with the other medical evidence.  *Id.*

Here, the ALJ satisfied the first requirement by noting Dr. Marchioni's conclusions, as did the ALJ in *Bryant*.  The ALJ actually paraphrased them.  Tr. 18.

The ALJ satisfied the second requirement as well.  Like the ALJ in *Bryant*, where the court did not consider the temporary limitations from an order of back surgery to refute a finding of residual capacity, the ALJ here did not see Dr. Marchioni's medical opinion as refuting the record.  Dr. Marchioni's opinion does not refute the determination that medication helps, nor does it refute that Ciccotti impeached himself.  It is also consistent with the other opinions and only differs in a matter of degree in the same direction.  Based on all of the evidence, the ALJ found the common elements of all of the findings to be determinative.

The ALJ satisfied the third requirement, too.  The ALJ (1) cited section 404.1527; (2) did not discuss the treatment relationship (as there was none), but did discuss the circumstances of Ciccotti's one examination by Dr. Marchioni; (3) noted the doctor's specialization as a psychologist; and (4) noted Dr. Marchioni's opinion that the patient was more severely limited in some areas than the treating VA doctors opined, but relied on the common factors for his decision.  Tr. 18–19.  The evidence is clear that the ALJ considered the opinion appropriately.

18

Plaintiff quotes Section 404.1527(d)(1) that "[g]enerally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you." Pl.'s Br. 4. But, this is insufficient to show that Dr. Marchioni's opinion must carry special weight as a matter of law when compared to other physicians in the record. First, while it is true that Dr. Phalen did not examine Ciccotti, the ALJ also used the opinions of the VA treating doctors in crafting his RFC determination, some of whom saw Ciccotti a number of times. Second, as set out above, medical opinions that match the language of RFC assessments must be weighed with the other evidence, not simply adopted because the language matches. SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996). The ALJ is to come up with the most consistent finding possible. *See* SSR 96-6p, at *2. Thus, even a medical opinion on an important issue does not bind the Commissioner to a particular application of the law. *Id.* The Court concludes that the ALJ was within his considerable discretion to read the medical evidence as he did.

2.    *The ALJ explained the weight given to competing medical opinions, as required.*

An ALJ is "required to articulate the weight given to experts" and it is error, but not reversible error, to omit such a note. *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) (per curium). But, a determination of RFC based on a treating physician's opinion is sufficient to satisfy Section 404.1527(d). *Weimer v. Astrue*, 284 F. App'x 129, 134 (5th Cir. 2008) (per curium). Also, though the ALJ must articulate the weight given to medical opinions, a recount of specific findings is not necessary if the ALJ shows he considered the medical findings. *Thompson v. Astrue*, 232 F. App'x 421, 424 (5th Cir. 2007) (per curium).

In *Hammond*, the opinions of two state agency medical consultants were omitted from the ALJ's discussion altogether. *Id.* at 850. The court held that this was error, but then analyzed

19

whether it would have been prejudicial.  *Id.* at 851.  The Fifth Circuit decided it was not prejudicial because the omitted opinions were consistent with the rest of the record.  *Id.*

A determination of RFC based on a treating physician's opinion is sufficient to satisfy Section 404.1527(d).  *Weimer*, 284 F. App'x at 134.  In *Weimer*, the plaintiff argued that the ALJ gave insufficient weight to the treating physician in the case, even though the ALJ cited the doctor specifically as the basis for the ALJ's RFC determination.  *Id.*  The Fifth Circuit rejected the argument and affirmed the ALJ.  *Id.*

Also, though the ALJ must articulate the weight given to medical opinions, mention of specific findings is not necessary if the ALJ shows he considered the medical findings.  *Thompson*, 232 F. App'x at 424.  In *Thompson*, the plaintiff argued that the ALJ disregarded medical diagnoses of a panic disorder and agoraphobia.  *Id.*  The ALJ stated in his written opinion only that the plaintiff "had severe anxiety-related disorders."  *Id.*  Still, the Fifth Circuit held that "[t]he RFC analysis was adequate" because such disorders "can include panic disorders and agoraphobia."  *Id.*  Discussing the findings enough to show they were considered is sufficient.

Here, the ALJ acted appropriately.  First, *Hammond* does not apply in so far as no error occurred in this case.  In this case, the opinions were noted, discussed, and weighed; not omitted.  Though the ALJ in this case did not use the word "weight," the rule means that the weight given to medical opinions  must be clear and supported by substantial evidence, not that the ALJ is required to address weight directly when it is not otherwise unclear or when he has explicitly addressed the issue in the written decision.  Here, the ALJ made clear that he believed Ciccotti's statements to the SSA and to his doctors were more truthful when his benefits were not clearly at issue.

Second, there is little basis for Ciccotti's claim that the ALJ "implicitly but unequivocally

rejected" Dr. Marchoni's medical findings.   In fact, the ALJ based the written opinion on the common elements of two doctors' reports, thereby adopting parts of Dr. Marchoni's findings.  Tr. 19.  This is similar to *Weimer*, in which the RFC determination relied on the determinations of the opinion in question.  Thus, the claim that the ALJ rejected Dr. Marchoni's opinion is similarly without merit.  The opinion was used in support of the determination.  Tr. 19.  Ciccotti offers no argument as to why he believes the findings were rejected other than the fact that two doctors had different opinions.  But the fact that there were different opinions on some medical issues does not mean that the opinions do not both independently support the legal determinations the ALJ made.  Because Dr. Marchoni's opinion independently supports the ALJ's conclusions, the Section 404.1527(d) requirements are satisfied.

Finally, even if Dr. Marchoni's findings had not independently supported the ALJ's conclusions, the ALJ's discussion of the differing findings shows that he considered them in accordance with the legal standard.  Like the ALJ in *Thompson*, who paraphrased a doctor's findings without specifically mentioning symptoms, the ALJ here mentioned and discussed the medical opinions that differed from the VA's assessments.  Tr. 18.  Like in *Thompson*, where the ALJ showed how the medical findings fit with the SSA's legal determinations, the ALJ here showed that Dr. Marchoni's findings only shed light on severe limitations in one area, and not enough to change the legal outcome.  Tr. 18.  The failure of the ALJ to mention the specific consequence the doctor stated does not mean the factor was not considered to the relevant legal standard.

3.     *The ALJ did not disregard the opinion of the state agency doctor.*

When a treating doctor's findings are not crucial to a RFC determination, an ALJ's omission of those findings does not mean they have been disregarded.  *Strempel v. Astrue*, 299 F. App'x 434,

438 (5th Cir. 2008) (per curiam).  Also, ALJs must only weigh medical opinions, but the question of disability is left to the commissioner.  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (denying rehearing of *Frank v. Barnhart*, 34 F. App'x 963 (5th Cir. 2002) (per curiam)); *Villalpando v. Astrue*, 320 F. App'x 208, 210–11 (5th Cir. 2009) (per curiam).

Even if an ALJ does not discuss findings, an ALJ has not erred if those findings were not crucial to an RFC determination.  *Strempel*, 299 F. App'x at 438.  In *Strempel*, the plaintiff pointed to a list of symptoms in a medical report by treating doctors that the ALJ had omitted from the written opinion.  *Id.*  But, the Fifth Circuit held that the ALJ considered the treating doctors' reports even though the specific list of symptoms was not included.  *Id.*  Because the plaintiff "[did not point] to any symptoms in the record affecting her RFC that the ALJ overlooked," the point of error was overruled.  *Id.*

ALJs must only weigh medical opinions, but the question of disability is left to the commissioner.  *Villalpando*, 320 F. App'x at 210–11.  A doctor's statement that a patient has "chronic disability from job activities" is not a medical opinion.  *Id.*  Likewise, "permanently disabled" is a legal conclusion, not a medical opinion.  *Thompson*, 232 F. App'x at 424.  The treating doctors made the quoted findings in each of the previous cases, but the ALJs determined that the full record did not support the conclusion and they were upheld.  *Id.*; *Villalpando*, 320 F. App'x at 210–11.  Finally, an ALJ is not obligated to justify disregarding a doctor's opinion that an applicant is unable to work; he must justify medical determinations of the severity of an impairment.  *Miller v. Barnhart*, 211 F. App'x 303, 304-05 (5t Cir. 2006).  In *Miller*, the ALJ explained that he gave little weight to a treating doctor's opinion that the patient was "disabled" and "unable to engage in any work" and because the Fifth Circuit held that the ALJ was not required to give special weight

22

to a doctor's non-medical conclusions, "the ALJ did not err." *Id.*

Here, even if the ALJ had not considered the findings in accordance with the legal standard, it would only make a difference if the omitted discussion would have been critical to the RFC determination. Because the ALJ relies on the common elements of the two reports to reach the RFC determination, Dr. Marchioni's additional consistent findings need not be addressed expressly, as in *Strempel*, in which the ALJ declined to discuss symptoms not critical to the RFC determination. Tr. 19.

Finally, the medical opinion/legal opinion distinction is a final reason the ALJ did not err on this point. The ALJ did not mention Dr. Marchioni's finding that Ciccotti's work attendance capability would be affected by his mental impairment. Tr. 1264. But that determination is not entitled to weight as a legal determination; it is only entitled to weight as a medical opinion. Thus, as a factual medical opinion, the ALJ adequately addressed the limitation by acknowledging that Dr. Marchioni found more severe limitations yet made his RFC determination considering all of the medical evidence before him. Tr. 18. The decisions in *Villalpando*, *Thompson*, and *Miller* show that doctors' opinions about work are not medical opinions entitled to special weight. The Court concludes that the ALJ did not err in omitting specific discussion of the weight he gave to the competing medical opinions because, for the three reasons outlined above, the weight the ALJ gave is clear in his analysis and complies with the relevant legal standards.

## V. Conclusion

Because the written opinion of the ALJ was supported by substantial evidence in the record, no procedural errors were committed by the ALJ, and because no prejudice would have occurred as a result of any of the alleged errors, the Court denies Plaintiff's request for relief and

the decision of the Commissioner to deny benefits is AFFIRMED.

It is so ORDERED.

SIGNED this 28th day of July, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE